PRESTON H. HUFFT, Judge Pro Tern.
Ms. Jane Vorbeck filed this action against her treating physician, Dr. J. Ollie Edmunds, and Tulane Medical Center seeking to recover damages for their negligence in the practice of medicine resulting in the development of an ulcer on her left calf. Plaintiff appealed a judgment in favor of defendants. We affirm.
Regrettably, the plaintiff was beset with numerous physical problems steming from rheumatoid arthritis when she consulted Dr. Edmunds in 1978 for treatment. Dr. Edmunds performed a lateral meniscecto-my, synovectomy and debridement of plaintiffs left knee on July 24, 1978.
Plaintiff testified that while she was in the recovery room as a result of the July 24, 1978 operation, she complained of a burning sensation in her leg which the nurse attributed to the surgery. Still under the anesthetic and the preoperation medication, the plaintiff fell asleep but remembers waking up on two other occasions complaining that her leg was burning but the nurse insisted that what she was experiencing was the result of the very painful operation she had undergone. She was fully awake before she was returned to her room. There was no pain or burning present at that time and she never again experienced such a sensation.
The recovery room nurse did not record the incident of the burning sensation nor did she report it to Dr. Edmunds. Plaintiffs brother, a physician, was in the recovery room when the plaintiff complained of the burning sensation and did not see the recovery room nurse take any action as a result of the complaints nor did he bring the complaints to the attention of anyone. He testified also that he did not look to see what type of cast was used. Prior to August 1, 1978, the plaintiff never mentioned the burning sensation incident in the recovery room or any problem she was encountering with itching of the leg to Dr. Ed-munds or anyone else.
On July 31, 1978, plaintiff under went tendon transfer surgery on her right hand. At the time of the hand operation, Dr. Edmunds removed the splint from the first operation, examined her left leg, put it through a range of motion and placed a knee immobilizer splint — a canvas splint with velcro strips — on her leg. At no time during this procedure did Dr. Edmunds notice anything wrong with the calf nor did the plaintiff make any complaints of discomfort in the area.
On the night of the July 31, 1978 hand operation, the plaintiff was able to loosen the knee immobilizer and scratched the left calf. As a result of this scratching, she sloughed off gobs of gooey skin. The next morning, plaintiff reported the sloughing to the nurse and brought it to the attention of Dr. Edmunds. Dr. Edmunds examined the area and prescribed treatment. Subsequent treatment, including a skin graft, was not successful in preventing the scarred indentation on plaintiffs calf.
Plaintiffs theory of the case is that Dr. Edmunds was negligent in placing a circumferential cast on her leg which resulted in the thermal burn she experienced in the recovery room. She also complains that the hard surface of the cast resting on the *502 calf played a role in her resulting injury. With respect to Tulane Medical Center, plaintiff contends that the recovery room nurse was negligent in not taking any action with respect to her complaints in the recovery room and in not reporting the incident to Dr. Edmunds.
Dr. Edmunds testified that he did not place a circumferential cast on plaintiffs leg but instead padded cotton around the calf, applied a medial, lateral splint, leaving the anterior and posterior exposed, and wrapped an ace bandage around it. The doctor’s operating report describes the splint as a medial and lateral padded plaster splint and the report of the anesthetist nurse refers to sterile sheet cotton and plaster splints. Dr. Edmunds admitted that he had, on three occasions in March 1979, signed discharge summaries pertaining to plaintiffs hospitalizations in 1978 which referred to plaintiffs ulcer as a “cast burn”. He repudiated the references to “cast burn” and offered that they were the result of inattention in the preparation and signing of the discharge records for the previous year.
According to Dr. Edmunds the plaintiff suffered a decubitus ulcer from pressure necrosis because of her rheumatoid arthritis, rheumatoid vasculitis, anemia, the existence of the medication, Predisone, in her system and recumbency. All of these factors predisposed the plaintiff to pressure necrosis. As a result of her medical problems and the taking of Predisone, plaintiffs skin was wafer thin and any insult or pressure, even of the slightest nature, could have caused the ulcer from which she suffered. Dr. Edmunds was empathic that the area he observed on August 1, 1978 was not a thermal burn and that no thermal burn could have occurred to the area of the calf as no cast was applied to that area. Since he did not observe any indication of a decubitus ulcer on his examination of plaintiffs calf at the time he removed the original splint on July 31, 1978, Dr. Edmunds felt the ulcer occurred sometime subsequent to the placement of the knee immobilizer on her leg.
The defendants called Drs. Eugene Da-bezies and George Byram, Jr. who were accepted as experts in the field of orthopedic surgery. Each of the experts testified that neither Dr. Edmunds or the Tulane Medical Center had deviated from the standard of care in their treatment of the plaintiff. They further testified as to the predisposition of the plaintiff to pressure necrosis because of her medical problems and the possibility of a decubitus ulcer from pressure necrosis arising spontaneously.
The trial court admitted into evidence the video tape of the deposition testimony of plaintiffs expert, an osteopathic surgeon, who had practiced psychiatry for the past eleven years. The trial judge admitted the video tape into evidence because he could not rule on the qualifications of the witness to testify without viewing the tape and indicated that the objections to the competency would be referred to the weight he would give the testimony. In his written reasons, the trial judge stated that after viewing the tape, he did not believe plaintiff’s witness was competent to comment on the standards of care applicable in this case but even granting substantive weight to the witness’ opinion it did not outweigh the contrary opinions offered by the defendants.
The plaintiff contends that the trial court erred in failing to apply the doctrine of res ipsa loquitur to this medical malpractice action. Holloway v. Southern Baptist Hospital, 367 So.2d 871 (La.App. 4 Cir. 1978). However the trial judge did apply the doctrine and ruled in favor of the defendants in the following excerpt from his Reasons for Judgment:
“The development of the ulcer as a result of pressure necrosis was an untoward event. The defendants have nevertheless carried their burden of explanation.”
The trier of fact in his very concise and pertinent Reasons for Judgment accepted the version of this incident as presented by the defendants. The trier of fact was in the best position to make that determination. An appellate court will not disturb *503 the findings of the trier of fact unless they are manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). The record supports the findings of the trial court.
Affirmed.